UNITED STATES v. The MAHALA. See Case No. 15,607.

---

## Case No. 15,709.

UNITED STATES v. MAILLARD et al.

[4 Ben. 459;[1] 13 Int. Rev. Rec. 27.]

District Court, S. D. New York. Jan., 1871.

FORFEITURE—REVENUE ACTS—CONCEALED FRAUD —STATUTE OF LIMITATIONS—PLEADING.

1. A personal action was brought in behalf of the United States, to recover the value of certain merchandise as forfeited, by reason of a violation of the 66th section of the revenue act of March 2, 1799 (1 Stat. 677). The defendants pleaded that the causes of action did not accrue within five years next before the beginning of the action. The plaintiffs demurred to the plea, as far as it related to three of the causes of action; and, as it related to the rest of them, they replied that the acts set forth in that respect in the declaration were fraudulently concealed by the defendants from the plaintiffs, until within five years before the suit, so that they could not, until within that period, elect whether to claim forfeiture of the goods, or of their value, or bring an action for such acts. To this replication the defendants demurred. Held, that the effect of the 14th section of the act of March 3, 1863 (12 Stat. 741), repealing so much of the 89th section of the act of March 2, 1799 (1 Stat. 696), and of the 3d section of the act of March 26, 1804 (2 Stat. 290), as impose a limitation upon the commencement of any action for the recovery of any forfeiture incurred by reason of the violation of any law relating to importations, is to leave in full force the limitation of the 4th section of the act of February 28, 1839 (5 Stat. 322), with its proviso.

[Cited in Amy v. City of Watertown, 22 Fed. 420.]

[Cited in Hughes v. Metropolitan El. Ry. Co., 130 N. Y. 14, 28 N. E. 765.]

2. The 4th section of the act of 1839 is applicable to suits in favor of the United States.

3. The plea, as to the first three causes of action, was, therefore, good, and the demurrer to it must be overruled.

4. As the statute made no exception to the limitation imposed by it, in the case of a concealed fraud, the court had no right or power to engraft such an exception on it.

[Cited in Andrews v. Dole, Case No. 373.]

[Cited in brief in Rogers v. Brown, 61 Mo. 188.]

5. The replication to the plea was, therefore, bad, and the demurrer to it must be sustained.

[This was a suit by the United States against Henry Maillard and Oscar Mussinan.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Noah Davis, Dist. Atty., and William Stanley, for the United States.

Sidney Webster, for defendants.

BLATCHFORD, District Judge. This is a a suit brought to recover the value of certain merchandise, on the ground that such value became forfeited by the defendants to the United States, because of a violation of the 66th section of the act of March 2, 1799 (1 Stat. 677). The second plea to the declaration is, that the causes of action did not accrue to the plaintiffs at any time within five years next before the commencement of the suit. The plaintiffs demur to this plea, so far as it relates to three of the causes of action, and the defendants join in demurrer. The plaintiffs reply, among other things, to this plea, so far as it relates to all the other causes of action, that the acts set forth in that respect, in the declaration, were fraudulently concealed by the defendants from the plaintiffs, until within five years prior to the commencement of the suit, whereby the same were unknown to the plaintiffs until within a period of less than five years next prior to the commencement of the suit, whereby the plaintiffs could not, until within that period, elect whether to claim forfeiture of the goods, or of their value, or bring an action for such acts. To this replication the defendants demur, and the plaintiffs join in demurrer.

The first question raised, and to be determined, on these pleadings, is, whether the suit is barred, so far as respects the three causes of action specified in the demurrer to the second plea, by the limitation of five years that is set up. The provision of the 66th section of the act of 1799 is, that "if any goods, wares, or merchandise, of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof, at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, wares, or merchandise, or the value thereof, to be recovered of the person making the entry, shall be forfeited." The 89th section of the same act (1 Stat. 696) provided as follows: "No action or prosecution shall be maintained in any case under this act, unless the same shall have been commenced within three years next after the penalty or forfeiture was incurred." The 3d section of the act of March 26, 1804 (2 Stat. 290), provided as follows: "Any person or persons guilty of any crime arising under the revenue laws of the United States, or incurring any fine or forfeiture by breaches of the said laws, may be prosecuted, tried and punished, provided the indictment or information be found at any time within five years after committing the offence or incurring the fine or forfeiture, any law or provision to the contrary notwithstanding." The 4th section of the act of February 28, 1839 (5 Stat. 322), provides as follows: "No suit or prosecution shall be maintained for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, unless the same suit or prosecution shall be commenced within five years from the time when the penalty or forfeiture accrued: provided, the person of the offender, or the property liable for such penalty or forfeiture, shall, within the same period, be found within the United States, so that the proper process may be instituted and served against such person or property therefor." The 14th section of the act of March 3, 1863 (12 Stat. 741), repeals so much of the 89th section of the act of March 2, 1799, and so much of the 3d section of the act of March 26, 1804, "as impose any limitation upon the commencement of any action or proceeding for the recovery of any fine, penalty, or forfeiture incurred by reason of the violation of any law of the United States relating to the importation or entry of goods, wares, or merchandise." The 89th section of the act of 1799 was confined to prosecutions under that act, and imposed a limitation of three years after the incurring of the penalty or forfeiture. The 3d section of the act of 1804 embraced forfeitures under the revenue laws generally, and extended the limitation to five years after the incurring of the forfeiture. The 4th section of the act of 1839 embraces, by the scope of its terms, suits for forfeitures accruing under the laws of the United States generally, (not merely the revenue laws,) and fixes the limitation at five years after the forfeiture accrued, with the proviso, that the person of the offender, or the property liable for the forfeiture, shall, within that period, be found within the United States, so that process may be served. This act of 1839 is not one relating specially to the revenue system, but is an act respecting the judicial system of the United States. There were, when this act of 1839 was passed, and there are now, forfeitures provided for by the laws of the United States, which are not forfeitures accruing under any revenue law, and also forfeitures which are not forfeitures to the United States. Forfeitures other than those under the revenue laws were not provided for, in respect to a limitation of the time of bringing the suit, by the act of 1804. Hence, the 4th section of the act of 1839 was passed. But that section, while retaining the term of five years, specified in the act of 1804, and covering by its language forfeitures accruing under any law of the United States, as well revenue laws as other laws, and as well forfeitures accruing to the United States as forfeitures accruing to individuals, restricts the limitation of five years by the proviso, which had not before been applied thereto, even in respect to suits for forfeitures under the revenue laws, that the limitation shall not be operative unless the state of things named in the proviso shall exist, as to finding the person of the offender, or the property, within the United States, within the five years, so as to serve process. Then

comes the 14th section of the act of 1863, which repeals specifically so much of the 89th section of the act of 1799, and so much of the 3d section of the act of 1804, as impose any limitation upon the commencement of any action or proceeding for the recovery of any fine, penalty, or forfeiture incurred by reason of the violation of any law of the United States relating to the importation or entry of goods, wares, or merchandise, leaving unrepealed the rest of those sections, and not specifically repealing the 4th section of the act of 1839. The act of 1863 is one relating almost entirely to the prevention and punishment of frauds upon the revenue, and to provision for the more certain and speedy collection of claims in favor of the United States.

Prior to the passage of the 14th section of the act of 1863, it was claimed that the provisions of the 89th section of the act of 1799, and of the 3d section of the act of 1804, had, so far as regarded a limitation on suits or prosecutions for penalties or forfeitures accruing under the laws of the United States, been superseded, and, by implication, repealed, by the 4th section of the act of 1839. Conk. Prac. (4th Ed.) p. 506, note 1. But the question was not free from doubt. The limitation in the act of 1799 related to customs only, and that in the act of 1804 related to the revenue laws only, while that in the act of 1839 extended to matters outside of the customs laws and other revenue laws, and the earlier two of the provisions were not expressly repealed. It was, therefore, doubtful, at least, under the settled rules for the construction of statutes, whether the provisions of the acts of 1799 and 1804 were repealed, by implication, by the 4th section of the act of 1839, in respect to the matters covered by that section. In this state of things, and while the act of 1839 is in force, the provisions of the acts of 1799 and 1804 are expressly repealed by the act of 1863, so far as they relate to a limitation on the actions and proceedings mentioned in the 14th section of the act of 1863, and the act of 1839 is left in force.

It is contended, on the part of the United States, that, since the passage of the 14th section of the act of 1863, there has been no limitation as to suits for the recovery of forfeitures incurred under the customs laws, being the laws named in that section. But I think the object of the passage of the 14th section of the act of 1863 was, among other things, to make it clear that the limitation on the commencement of suits for the recovery of fines, penalties, and forfeitures incurred by reason of the violation of the customs laws should fall under the 4th section of the act of 1839, and be subject to the restrictive proviso to that section, and not be an unrestricted limitation, as in the acts of 1799 and 1804. Hence, the absolute limitations prescribed as to such suits by the acts of 1799 and 1804 were repealed, leaving in force, as to such suits, the restricted and qualified limitation provided for by the 4th section of the act of 1839. It results, therefore, that actions and proceedings for the recovery of fines, penalties, and forfeitures incurred by reason of the violation of any law of the United States relating to the importation or entry of goods, wares, or merchandise, are subject to the limitation prescribed by the 4th section of the act of 1839, under the conditions of the proviso to that section. I find my views on this question confirmed by the opinion of the district judge for the Eastern district of Michigan, in the case of In re Landsberg [Case No. 8,-041], in May, 1870.

It is urged, that the United States are not embraced within the 4th section of the act of 1839, because not expressly named therein; that to bind them by the limitation of that section would bar them of a right, and would violate the principle of public policy, that the government is not to be prejudiced by the negligence of public officers to whose care the public interests are confided; and that it is a settled principle that the government is never barred by an act of limitation, unless named. U. S. v. Knight, 14 Pet. [39 U. S.] 301, 315. Without going into a detailed examination of the legislation of congress on the subject of fines, penalties and forfeitures, it is sufficient to say, that the course of it has been such as to show, that wherever fines, penalties and forfeitures generally, accruing under the laws of the United States, are spoken of, those accruing to the United States are intended to be included, unless they are specially excepted. This consideration, in connection with the language of the 4th section of the act of 1839, shows an intent to include the United States within that section, and no intent is shown to exclude them. The section speaks of prosecutions for penalties and forfeitures other than pecuniary, and also of the person of the "offender," language which would scarcely have been used if the United States were not intended to be embraced within the purview of the section. The three causes of action referred to in the demurrer to the second plea being for forfeitures incurred by the violation of a law of the United States, relating to the importation and entry of merchandise, the second plea is, therefore, a good plea to such three causes of action, and the demurrer to it must be overruled.

The replication to the plea of the statute of limitations, so far as it relates to all the causes of action except the three named in the demurrer to such plea, is based on the view, that a fraudulent concealment by the defendants, from the plaintiffs, of the acts set forth in such causes of action, until within five years prior to the commencement of the suit, whereby the same were unknown to the plaintiffs until within a period

of less than five years next prior to the commencement of the suit, bars the running of the statute. It is well settled, that, however strong the reason may be, a court cannot engraft on a statute of limitations an exception which the statute itself does not make. McIver v. Ragan, 2 Wheat. [15 U. S.] 25; Bank of State of Alabama v. Dalton, 9 How. [50 U. S.] 522; The Sam Slick [Case No. 12,282]. So, also, the clear weight of authority, at least in the state of New York, is, that where the statute does not make a fraudulent concealment of the existence of the cause of action an exception to the running of the statute, the court has no right or power to make such exception, either directly, or by the indirect method of saying that the cause of action does not accrue, in case of a fraudulent concealment, until the discovery of the fraud. Troup v. Smith's Ex'rs, 20 Johns. 33; Leonard v. Pitney, 5 Wend. 30; Allen v. Miller, 17 Wend. 202; Humbert v. Trinity Church, 24 Wend. 587. It is true, that Mr. Justice Story, in Sherwood v. Sutton [Case No. 12,782], dissents from the decision in 20 Johns., but I cannot but regard the making by the court of an exception, in a case of fraudulent concealment, when the statute does not make it, as violating the rule settled by the supreme court, as before stated. Especially must this be so where the statute has, as in the 4th section of the act of 1839, specified, in a proviso, declared exceptions.

But it is further urged, that, although, ordinarily, simple fraudulent concealment may not prevent the running of the statute, yet the statute did not begin to run in this case until the offence became known to the government, for the reason that, under the 66th section of the act of 1799, the government has the option to take a forfeiture of the goods or a forfeiture of their value, and that it cannot exercise such option or bring a suit until it knows of the violation of law. Another form of the argument is, that the forfeiture did not take place until the option was exercised; that the option was not exercised until the suit was brought; that, therefore, the forfeiture did not accrue till the suit was brought; and that, consequently, the statute did not begin to run till the suit was brought. The answer to these views is, that, if they were to prevail, they would require the court to admit fraudulent concealment as an exception to the running of the limitation, as well where there was no option to be exercised, as where there was the privilege of exercising an option. No suit can be brought in any case until the violation of law is known. Whether there is an option to be exercised or not, as to the kind of suit to be brought, can make no difference, if the right to bring the suit that is brought, that is. the cause of action, or. in the language of the 4th section of the act of 1839, the "forfeiture," accrued when the offence was committed. It did so accrue, as against the defendants in this case, when the offences alleged were committed. Ignorance of the right to exercise the option can be of no more avail to constitute an exception to the statute, than ignorance of the right to bring any suit at all, or ignorance of the existence of the offence. Such ignorance does not prevent the running of the statute or the accruing of the forfeiture sued for, •as respects the thing or person sued, as between it or him and the United States. This view is not in conflict with the decision in the case of Caldwell v. U. S., 8 How. [49 U. S.] 366. The question there involved was, whether, in case of a violation of the 66th section of the act of 1799, goods undervalued in the entry, with design to evade the duties thereon, became forfeited to the United States, under that section, eo instanti, on the false entry, so as to avoid a sale of them between that time and the time of their seizure, to a bona fide purchaser or one altogether ignorant of the fraud, and in no way connected with the perpetrator of it, except in buying the goods from him at a fair price. The court held, that, as, under the 66th section, the forfeiture was of the goods or their value, the forfeiture of the goods did not, by the commission of the offence, become so fixed as to vest the title to them in the United States eo instanti, as against a bona fide purchaser of them, who acquired his title before the United States, by seizing the goods, exercised the privilege of election conferred on it by that section. The same doctrine had been previously held in U. S. v. Grundy, 3 Cranch [7 U. S.] 338. But that was a very different question from the one involved in this case. There is no question here of the vesting of the title to goods as against a bona fide purchaser, but a question of the commission of an offence, and of the creation thereby of a right to bring a suit therefor in one form or another.

I am entirely satisfied that the replication is bad in substance. The demurrer to it is. therefore, sustained.